Shirley MOON, Plaintiff,

v.

Orville FREEMAN, as Secretary of Agriculture, Defendant.

Commodity Credit Corporation, Additional Party Defendant.

Civ. No. 2651.

United States District Court
E. D. Washington, N. D.

Feb. 17, 1966.

As Amended May 2, 1966.

Savage & Nuxoll, Colfax, Wash., and Francis Conklin, Spokane, Wash., for plaintiff.

Frank R. Freeman, U. S. Atty., Spokane, Wash., for defendant.

POWELL, Chief Judge.

The plaintiff, a producer and exporter of wheat, challenges the constitutionality of the provision of the Agricultural Adjustment Act of 1938 as amended, and the Food and Agriculture Act of 1962 (7 U.S. C.A. §§ 1379a–1379j) requiring the purchase of wheat marketing export certificates. He contends that the Act constitutes the levy of a tax on exports which is prohibited by Article I, Section 9, Clause 5, of the Constitution of the United States, which states, "No Tax or Duty shall be laid on Articles exported from any State."

The original complaint named the Secretary of Agriculture as sole defendant and asked for a judgment of refund of $168.52, and an injunction against his further enforcement of payment for export marketing certificates. A three-judge court considered the case and denied the injunction. 245 F.Supp. 837. It is now before me on cross motions for summary judgment on stipulated facts. The Commodity Credit Corporation has been joined as an additional defendant. The sole question for determination is whether wheat marketing export certificates constitute a tax or duty in contravention of the constitutional provision quoted above.

The Secretary made and promulgated regulations to implement the Agricultural Adjustment Act of 1938 as amended, as it related to the export wheat marketing certificate program. The Act provides that during any marketing year for which a certificate program is in effect, all persons exporting wheat shall, prior to such export, acquire export marketing certificates equivalent to the number of bushels so exported. Only wheat exported for non-commercial purposes and donations are excepted from this requirement. Under the 1964 program the Secretary determined the face value per bushel of export certificates to be twenty-five cents, the amount as required by the Act (7 U.S.C.A. § 1379c(c)) by which the level of price support for wheat accompanied by export certificates ($1.55) exceeded the level of price support for non certificate wheat ($1.30).

The Act, 7 U.S.C. § 1379d(b), provides that the Commodity Credit Corporation shall, on the exportation of any wheat, make a refund to the exporter or allow him a credit against the amount payable by him for marketing certificates. The amount will be as the Secretary determines so as to make United States wheat generally competitive in the world market and fulfill the international obligations of the United States.

The plaintiff did not elect to comply with the Act in limiting acreage. He was not eligible as a producer to receive export marketing certificates for wheat production on his farm.

In January 1965 plaintiff contracted to sell in export wheat harvested by him after July 1, 1964. He filed Form CCC–518, Report of Wheat Exported, reporting 1872.4 bushels, computed his export certificate liability at $411.93, his refund as $243.41 and remitted the difference of $168.52. He seeks recovery of that amount here.

The question for determination is whether the Act is a revenue measure within the proscription of the Constitution or whether it is regulatory and thus permitted. Under the commerce clause of the Constitution, Article I, Section 8, the Congress has the power to regulate commerce with foreign nations and among the several states. That regulation may be effectuated by price control. Such regulation has been held to be within the legislative power of Congress.

Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942); Federal Power Commission v. Natural Gas Pipeline Company, 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037 (1942); United States v. Wrightwood Dairy Company, 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726 (1942); Sunshine Anthracite Coal Company v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940); United States v. Rock Royal Cooperative, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939).

■ The regulation of agriculture is recognized to be within the power of Congress under the commerce clause. It includes the power to regulate prices of commodities in commerce and the practices which affect such price. The power of Congress to regulate commerce is,

"the power * * * to prescribe the rule by which commerce is to be governed. This power like all others vested in Congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the Constitution." Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 196–197, 6 L.Ed. 23.

The production and marketing of wheat has been the subject of repeated legislation. The enactment in question describes somewhat the problem as follows:

"The conditions affecting the production of wheat are such that without Federal assistance, producers cannot effectively prevent disastrously low prices for wheat. It is necessary, in order to assist wheat producers in obtaining fair prices, to regulate the price of wheat used for domestic food and for exports * * *". (7 U.S.C. § 1379a)

■ The test to determine whether a statute imposes a tax or whether it is regulatory is determined by consideration of the purposes and objects of the statute as a whole. If the revenue for the general support of government is the primary purpose and regulation incidental, the imposition of a tax is controlled by the taxing provisions of the Federal Constitution. If regulation is the primary purpose of the statute then the statute is not controlled by the taxing power but by the power of Congress to regulate the particular commodity or subject matter of the statute.

The purpose of the wheat marketing certificate program is not to raise revenue for meeting the general expenses or obligations of the government. There appears to be nothing in the context of the Act or in the legislative history of the Act to lead one to believe that Congress was prompted by any motive other than to regulate the price and production of wheat. The Act prior to November 3, 1965, provided:

"In order to expand international trade in wheat and wheat flour and promote equitable and stable prices therefor the Commodity Credit Corporation shall, upon the exportation from the United States of any wheat or wheat flour, make a refund to the exporter or allow him a credit against the amount payable by him for marketing certificates, in such amount as the Secretary determines will make United States wheat and wheat flour generally competitive in the world market, avoid disruption of world market prices, and fulfill the international obligations of the United States." (7 U.S.C.A. §§ 1379 d(b)).

The legislative history of the Act as set forth in Appendix C to defendant's Supplemental Brief leaves little question but that the Act was intended as a regulatory measure. The purpose is stated as follows:

"Since the purpose of requiring certificates on wheat and wheat products exported is not to obtain revenue, but solely to regulate the price at which such products are exported and eliminate the possibility of windfall profits, * * *." Sen.Doc. No. 874, 88th Cong., 2nd Sess., p. 33. 1964 U.S.Code Cong. & Ad. News, 88th Cong., 2nd Sess. 2130, 2154.

■ In Board of Trustees of the University of Illinois v. United States, 289 U.S. 48, 57, 53 S.Ct. 509, 77 L.Ed. 1025, it is held that the United States of America may regulate or prohibit certain imports. The power to regulate commerce by prohibiting either importation or exportation of a commodity would include the lesser power of permitting exports only by compliance with certain regulatory controls. Such is the provision here in question. The use of export marketing certificates in conjunc-

tion with the refund provisions of the Act or credits as provided by the Act enables the exporter to meet world competition and also prevents him from selling below the world market and thus permits the United States of America to fulfill its obligations under the International Wheat Agreement.

It is my opinion that the Act is regulatory and not a revenue measure and that it is constitutional. The plaintiff's motion for summary judgment will be denied and the defendant's motion for summary judgment granted. Defendant's counsel is requested to prepare and submit the necessary order.